# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-2239
_____

Northland Management & Construction, LLC

*Plaintiff - Appellee*

v.

City of Parkville

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Western District of Missouri - St. Joseph
_____

Submitted: January 13, 2026
Filed: August 3, 2026
_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.
_____

KELLY, Circuit Judge.

The City of Parkville, Missouri (the City) denied Northland Management & Construction, LLC (Northland) a final Certificate of Occupancy (CO) for Lot 9, one of four lots it owned and developed in a Parkville subdivision. Northland sued the City, seeking a CO for Lot 9 and damages that accumulated while it could not sell the developed lot for full value. After a bench trial, the district court ruled in favor

of Northland,[1] ordered the City to issue a CO, and awarded damages. We affirm the judgment but remand for recalculation of damages.

I.

In 2015, the City approved the Sixth Plat[2] of a subdivision in Parkville, Missouri. Lot 9 is located in the Sixth Plat on the same street as three other lots Northland owns and developed. When Northland purchased Lot 9, there was a swale[3] that carried stormwater to a detention basin, and the swale was located entirely on Lot 9. The Sixth Plat, however, did not include a swale across Lot 9. Rather, it contemplated grading Lot 9 at a continuous slope all the way to its southern property line, which it shares with Lot 3. Lot 3 is not in the Sixth Plat.

Northland began construction of the home on Lot 9 in the fall of 2020, but the lot's soil composition and steep backyard slope caused problems. Unlike Northland's other three lots in the Sixth Plat, Lot 9 was composed almost entirely of fill dirt. Northland first tried to build a retaining wall uphill from the existing swale. When that failed, Northland graded Lot 9 to its southern property line and installed

---

[1]The claims the district court resolved before trial in the City's favor are not before us on appeal.

[2]The Sixth Plat is a section of the larger subdivision, but it also refers to a multi-page plan entitled "Cider Mill Ridge Sixth Plat: Site Disturbance Plans, Street Plans, and Storm Sewer Improvements." The Sixth Plat was approved by the City and contains plans for the utilities layout, grading, erosion and sediment control, and street profile, among others. See also Plat, Black's Law Dictionary (12th ed. 2024) ("A map or plan of delineated or partitioned ground; esp., a map describing a piece of land and its features, such as boundaries, lots, roads, and easements[.]").

[3]A swale is "a low-lying or depressed and often wet stretch of land[,]" used here to convey water along a residential lot line to a detention basin. Swale, Merriam-Webster.com, https://www.merriam-webster.com/dictionary/swale (last visited July 24, 2026).

piers underneath the rear of the home on Lot 9 to stabilize it. In the process of grading the lot, Northland filled in the existing swale.

In the fall of 2021, the City told Northland that it could not grade into the swale on Lot 9, nor could it fill the swale due to erosion and water flow concerns. On December 9, 2021, representatives of the City and Northland met at Lot 9, and the City proposed three options to resolve the concerns. Northland chose to install a culvert and an accompanying swale, but it did so at the wrong elevation—which prevented the culvert from reaching full capacity during heavy rain. Northland also failed to install a new swale on top of the culvert, as directed, and instead placed the new swale downhill from the culvert, toward the southern property line shared with Lot 3. As a result of the new swale's placement, stormwater runoff was shared between Lot 9 and Lot 3, rather than running across only Lot 9 as it did prior to construction. As water diverted to Lot 3, the City began to receive complaints.

In August 2022, the City asked Northland to seek, or "pull," a grading permit pursuant to City of Parkville Municipal Code Section 520. Section 520 states:

> Section 520.010 **Permit Requirement.**
> A. Except as provided in Section 520.020, no person shall, without first obtaining a grading permit for such work from the Building Official, alter or cause to be altered the present surface of the ground.
>
> . . . .
>
> Section 520.030 **Exceptions.**
> A. A grading permit is not required for the following:
>    1. Where grading is a part of an approved subdivision development for which street and utility plans have been approved.

Parkville, Mo. Ord. No. 1206 §§ 1, 3, 2-5-1990. The City claimed that Northland had graded Lot 9 to the property line it shared with Lot 3, thus triggering the permit requirement under Section 520. Northland refused to do so, because it believed Lot 9 was not subject to Section 520's permitting requirement.

In November 2022, the City inspected Lot 9 and noted the following deficiency requiring action by Northland: "Repair grade at the rear of the property per Section 520 Parkville Municipal Code (public works approval)." On December 19, 2022, the City issued a temporary CO that again identified "Section 520" work as incomplete. The City ultimately refused to issue a final CO. This litigation followed. Following a bench trial, the district court ruled in favor of Northland on its equal protection and state law inverse condemnation claims, and it compelled the City to issue the CO for Lot 9.[4] The City appeals.

## II.

"Following a bench trial, we review the district court's legal conclusions de novo and its factual findings for clear error." PHL Variable Ins. Co. v. 2008 Christa Joseph Irrevocable Tr. ex rel. BNC Nat. Bank, 782 F.3d 976, 979 (8th Cir. 2015) (citing Urb. Hotel Dev. Co. v. President Dev. Grp., L.C., 535 F.3d 874, 879 (8th Cir. 2008)). "Under the clearly erroneous standard, 'we will overturn a factual finding only if it is not supported by substantial evidence in the record, if it is based on an erroneous view of the law, or if we are left with the definite and firm conviction that an error was made.'" Urb. Hotel, 535 F.3d at 879 (quoting Roemmich v. Eagle Eye Dev., LLC, 526 F.3d 343, 353 (8th Cir. 2008)). "There is a strong presumption that

---

[4]Northland brought five counts in its Complaint: Count I – Regulatory Taking; Count II – Procedural Due Process; Count III – Equal Protection; Count IV – Inverse Condemnation (in the Alternative to Count I); and Count V – Mandamus and Declaratory Judgment. Prior to trial, the district court entered summary judgment to the City on Northland's procedural due process (Count II) and inverse condemnation claims (Count IV), but only to the extent that Northland's inverse condemnation claim rested on federal law. Thus, at trial the court considered Count I, Count III, Count IV (Missouri state law), and Count V. On appeal, the City challenges the district court's entry of judgment in favor of Northland on its inverse condemnation and equal protection claims.

the factual findings are correct." Urb. Hotel, 535 F.3d at 879 (citing Am. Fed'n of State, Cnty. & Mun. Emps. v. City of Benton, 513 F.3d 874, 883 (8th Cir. 2008)).

## III.

### A.

First, the City challenges the district court's findings that support its decision to grant judgment to Northland on its Missouri state law inverse condemnation claim.[5] In Missouri, "when private property is damaged by a nuisance operated by an entity having the power of eminent domain, the proper remedy is an action in inverse condemnation." Byrom v. Little Blue Valley Sewer Dist., 16 S.W.3d 573, 577 (Mo. 2000) (emphasis omitted) (quoting Heins Implement Co. v. Highway & Transp. Comm'n, 859 S.W.2d 681, 693 (Mo. banc 1993), abrogated on other grounds by Southers v. City of Farmington, 263 S.W.3d 603, 612–13 (Mo. banc 2008)). No formal exercise of the power of eminent domain is required to sustain a claim for inverse condemnation. Cnty. of Scotland v. Mo. Pub. Entity Risk Mgmt. Fund, 537 S.W.3d 358, 364–65 (Mo. Ct. App. 2017). Rather, "the ordinary and natural meaning of 'inverse condemnation' includes claims based on regulatory takings resulting from the unreasonable or arbitrary enforcement of land use regulations." Id. at 366.

"Inverse condemnation is the exclusive remedy when private property is taken or damaged without compensation as a result of a nuisance operated by an entity that has the power of eminent domain." Miller v. City of Wentzville, 371 S.W.3d 54, 57 (Mo. Ct. App. 2012). "The elements of an inverse condemnation action based on nuisance are (1) notice, (2) an unreasonable operation in spite of that notice, (3) injury, (4) damage, and (5) causation." Id. On appeal, the City does not challenge

---

[5]The district court granted judgment for the City on Count I, Northland's regulatory taking claim, which is not before us.

notice, injury, or damage. Rather, the City argues that the application of Section 520 to Lot 9 was not a nuisance and did not cause Northland's damages.

The district court found that "Northland graded Lot 9 consistent with the city-approved platting documents and consistent with the accepted practice for swales." This finding was not clearly erroneous. At trial, the City's Public Works Director testified that the stormwater drainage study for the Sixth Plat contemplated grading Lot 9 completely to the property line, as Northland did here. Moreover, the Director testified that it is a "generally-accepted practice" for stormwater to "be carried along the property lines and shared 50/50" between two lots, which was the case after Northland completed its construction.

The district court also found that Lot 9 is a portion of the Sixth Plat, which in turn is part of a larger subdivision. And because Northland's grading accorded with the Sixth Plat, a permit was not required under Section 520's exception for "grading [that] is a part of an approved subdivision development[.]" Parkville, Mo. Ord. No. 1206 § 3, 2-5-1990. On these facts, it was not clearly erroneous for the district court to find the City's application of Section 520 unreasonable once the City understood that Lot 9's grading complied with the Sixth Plat and accepted practice. See Miller, 371 S.W.3d at 61 ("[I]t is the failure to correct or discontinue an unreasonable use after notice that gives rise to a nuisance."); Cnty. of Scotland, 537 S.W.3d at 366–68. Furthermore, the City's expressed rationale for denying a final CO was Section 520's permit requirement. This satisfies the causation standard for an inverse condemnation claim predicated on nuisance. See Miller, 371 S.W.3d at 58 (noting "the 'but for' causation test applies" to inverse causation claims). The district court did not clearly err in its findings to support judgment in favor of Northland on its inverse condemnation claim.

B.

Next, the City challenges the grant of judgment to Northland on its class-of-one equal protection claim. "[T]he Supreme Court's 'cases have recognized

-6-

successful equal protection claims brought by a "class of one," where the plaintiff alleges that [it] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Mensie v. City of Little Rock, 917 F.3d 685, 692 (8th Cir. 2019) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam)).

In the zoning or municipal ordinance context, courts reviewing a class-of-one discrimination claim may not reverse a municipality's decision "merely because a contrary result may be permissible." Id. (quoting Burns v. City of Des Peres, 534 F.2d 103, 108 (8th Cir. 1976)). Rather, courts may only "ascertain whether there has been a transgression upon the property owner's constitutional rights." Id. (quoting Burns, 534 F.2d at 108). "A class-of-one plaintiff must therefore provide a specific and detailed account of the nature of the preferred treatment of the favored class, especially when the state actors exercise broad discretion to balance a number of legitimate considerations." Id. (quoting Nolan v. Thompson, 521 F.3d 983, 990 (8th Cir. 2008)). The "threshold inquiry" in this type of claim is whether the claimant is "similarly situated to others who allegedly received preferential treatment." Robbins v. Becker, 794 F.3d 988, 996 (8th Cir. 2015) (quoting Domina v. Van Pelt, 235 F.3d 1091, 1099 (8th Cir. 2000)).

The district court found that Stephen Melton, a property owner on the same street as Lot 9, was similarly situated to Northland and received preferential treatment.[6] At trial, the subdivision's original developer testified that he gave Melton permission to make changes to the swale in his back yard, or to "push water" off his property line. The City did not require Melton to get a Section 520 permit before or after he made these alterations. But the City expressly declined to issue a final CO to Northland because Lot 9 did not comply with Section 520. Accordingly, the court found the City intentionally treated Northland differently than Melton. These

---

[6]We do not consider the district court's alternative findings on this prong of the threshold inquiry.

findings are supported by the record, and the City has failed to establish how they are otherwise clearly erroneous.

The district court also concluded that the record showed no rational basis for the City's actions. It found Northland graded Lot 9 consistent with both the Sixth Plat and the accepted practice where water runoff is shared between abutting properties. The court additionally found that Northland's grading and swale placement did not constitute a nuisance because it did not amount to an unreasonable interference with the flow of surface waters. See Heins Implement Co., 859 S.W.2d at 689 (under Missouri law, a property owner "'incurs liability when his harmful interference with the flow of surface waters is unreasonable.' Reasonableness is a question of fact, to be determined in each case by weighing the gravity of the harm to the plaintiff against the utility of the defendant's conduct." (citation omitted)). And given these facts, we agree with the district court's determination that the City's offered justifications for its actions do not bear a rational relationship to any legitimate governmental purpose. See Pro-Eco, Inc. v. Bd. of Comm'rs of Jay Cnty., 57 F.3d 505, 515 (7th Cir. 1995) ("An ordinance generally applicable on its face but enforced for no legitimate reason against only an individual . . . may violate the Equal Protection Clause." (citing Yick Wo v. Hopkins, 118 U.S. 356, 373–74 (1886))). We decline the City's invitation to speculate on its behalf as to possible reasonable bases for its actions. Cf. ASARCO, LLC v. Union Pac. R.R. Co., 762 F.3d 744, 753 (8th Cir. 2014).

C.

We turn now to the question of damages. We review the amount of a damages award for clear error, but we review de novo the method of calculating damages. See Knowlton v. Anheuser-Busch Cos. Pension Plan, 849 F.3d 422, 430 n.7 (8th Cir. 2017).

On Northland's inverse condemnation claim, the district court determined that the measure of the damages was "equal to the decrease in the fair market value of

Lot 9 caused by the refusal to issue a Final Certificate of Occupancy." The court calculated these damages as the difference between Lot 9's value with and without a final CO. Notably, however, the court also ordered the City to issue a final CO, and the City subsequently complied.

Under Missouri law, "if the public entity only temporarily damaged the property rights of plaintiff . . . the proper measure [of damages] is the diminution in value of the use of occupancy of the property for the period taken or damaged. Usually, this value is equivalent to the rent that probably could have been obtained for such period." Byrom, 16 S.W.3d at 577 (citation modified). Put another way, Missouri law requires inverse damages calculations to be consistent with the duration of the harm. See id. The district court's method for calculating inverse condemnation damages was not based on the period during which Lot 9's value was diminished. Instead, the court calculated damages based on the value of the withheld final CO, but also ordered the City to issue a final CO. Once the City did so, Northland was effectively compensated twice. Therefore, we reverse the district court's damages awards on Northland's inverse condemnation and equal protection claims and remand for recalculation of damages to take the City's issuance of the final CO into account.

IV.

We affirm the district court's judgment in favor of Northland on its inverse condemnation and equal protection claims, but reverse and remand for recalculation of damages.[7]

———————————————

---

[7]We deny the City's motion to strike, as the materials it seeks to strike were presented at trial and are thus part of the record.